IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs November 6, 2012

## STATE OF TENNESSEE v. COLBY TERRELL BLACK

**Appeal from the Circuit Court for Giles County**
**Nos. 13274, 13632, 14763      Stella L. Hargrove, Judge**

---

**No. M2012-00833-CCA-R3-CD - Filed November 13, 2012**

---

The defendant, Colby Terrell Black, appeals the trial court's revocation of his probation and reinstatement of his original twelve-year sentence in the Department of Correction. He argues that the trial court violated his right to due process by making insufficient findings at the revocation hearing, and the State agrees. Following our review, we reverse the judgment of the trial court and remand for entry of an appropriate written order that summarizes the evidence and clearly sets forth the reasons for the revocation of probation.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Reversed and Remanded**

ALAN E. GLENN, J., delivered the opinion of the Court, in which JERRY L. SMITH and JOHN EVERETT WILLIAMS, JJ., joined.

Richard H. Dunavant, Assistant Public Defender, for the appellant, Colby Terrell Black.

Robert E. Cooper, Jr., Attorney General and Reporter; Clark B. Thornton, Assistant Attorney General; Mike Bottoms, District Attorney General; and Larry Nickell, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### FACTS

On September 10, 2007, the defendant pled guilty to aggravated assault in Case No. 13274 and was sentenced to six years, suspended to supervised probation. On September 26, 2008, he pled guilty to two counts of sale of cocaine in Case No. 13632 and was sentenced to concurrent terms of three years, suspended after service of sixty days. On February 22, 2010, he pled guilty to aggravated assault in Case No. 14763 and was sentenced to six years,

suspended to supervised probation, to be served consecutively to Case No. 13274. A revocation warrant was filed on September 19, 2011, based on the defendant's September 8, 2011 arrest for domestic aggravated assault and his failure to pay probation fees, fines, court costs, and restitution.

At the March 20, 2012 revocation hearing, Tikara Black, the defendant's sister-in-law, testified that the defendant came to her house on September 8, 2011, looking for his brother. When Mrs. Black informed him that his brother was not home, the defendant became upset because he thought she was lying to him. The defendant started "ranting and raving" and "had one of his spells," so Mrs. Black asked him to leave, but he refused. As she was trying to unchain her dog for protection, the defendant threw a scooter at her, striking her on the shoulder. The defendant then grabbed her by her shirt, causing her to fall to the ground. She managed to unleash her dog, and the defendant left because he was afraid of the dog. Mrs. Black then left to take her sister-in-law home and when she returned, the defendant was there and had a butcher knife in his hand. He was "screaming and hollering" and trying to get in her car on the passenger side. The defendant threatened to stab her, and she left and called the police. When she later returned home, she noticed "a little knife spot" on her dog and believed that the defendant had stabbed the dog but said it was not a serious wound.

Eugene Michonski, the defendant's probation officer, testified that he filed the probation violation warrant because the defendant was in arrears on his probation fees. The defendant had made eight payments toward his fines and costs in 2008-2009 but then stopped paying when he "got in trouble in Lawrence County for a possession charge and D.U.I. third, and pled guilty to a simple possession and . . . D.U.I. second." The defendant's last payment was made on September 6, 2011, when he made a $15 fee payment and a $5 court cost payment in Case No. 13632. The defendant provided proof that he was trying to find a job. The defendant had been ordered to undergo a mental evaluation, and the defendant's mother informed Michonski that the defendant had been "placed on a couple of strong medications." In response to questioning from the trial court, Michonski said that multiple violation warrants had been filed against the defendant and that he had two partial revocations.

Darlene Black, the defendant's mother, testified that the defendant suffered from bipolar disorder and schizophrenia and that his diagnoses recently had been confirmed at Centerstone and Middle Tennessee Mental Health Institute. She said that the defendant had "had spells ever since he was a juvenile in school." When "that incident happened," the defendant was ordered to undergo a mental evaluation and was prescribed medication that helped him. The defendant received treatment as a juvenile but lost his benefits when he became an adult. As a result of not having his medication, the defendant had "relapse after relapse." Ms. Black said the defendant had been accepted into a "vocational rehab" program.

The defendant testified that he had no memory of the incident involving his sister-in-law and acknowledged that he had undergone a mental evaluation while in jail. He said that he heard voices "telling [him] to do stuff," but his medication helped him to not hear the voices. The defendant acknowledged that he had "spells" but said he did not harm anyone. He claimed that on the night of "this incident . . . [s]omebody jumped out of the bushes and . . . beat [him] with a baseball bat." He said that he had always paid his probation fees and that the arrearage occurred "when [he] was locked up over a year on violation things." The defendant acknowledged that he did better while taking his medications and said that he "blank[s] out" when in jail. He said he was going to attend a school "with counselors . . . [w]here they make me go to Centerstone . . . [and] take my medication and stuff."

In rebuttal, the State recalled the defendant's probation officer who testified in detail as to the defendant's history of probation violations.

At the conclusion of the hearing, the trial court revoked the defendant's probation and reinstated his original sentence in the Department of Correction, with the recommendation that he be placed in special needs. Among other things, the court found:

> [The defendant has] had multiple violations and amendments to warrants over the years. And . . . at least three of the four judges have obviously been sympathetic and empathetic with [the defendant] in . . . ordering partial revocations.

> And . . . I think that [the defendant] has had a lot of breaks in our criminal justice system.

> Now, we have a complete record now, insofar as the history of revocations and supervision, and the outcome of those revocation warrants, so I'm not going to speak to that, except, to say, that, "Here we are again. And what do we do?"

> You know, . . . it won't stop. It will not stop, and so that's why we have special needs.

> And so, today, with his third set of revocation warrants, the Court finds that the State has carried its burden of proof and that [the defendant] should serve his time.

That same day, the trial court entered a preprinted order fully revoking the defendant's probation and reinstating his original sentence, with the notation that the court was

recommending the defendant "for special needs and counseling and medication."

## ANALYSIS

The defendant argues that the trial court violated his right to due process "because the court failed to make a sufficient statement as to the evidence relied upon and reasons for revoking [his] probation." The State agrees.

A trial court is granted broad authority to revoke a suspended sentence and to reinstate the original sentence if it finds by the preponderance of the evidence that the defendant has violated the terms of his or her probation and suspension of sentence. Tenn. Code Ann. §§ 40-35-310, -311 (2010). The revocation of probation lies within the sound discretion of the trial court. State v. Shaffer, 45 S.W.3d 553, 554 (Tenn. 2001); State v. Harkins, 811 S.W.2d 79, 82 (Tenn. 1991); State v. Stubblefield, 953 S.W.2d 223, 226 (Tenn. Crim. App. 1997); State v. Mitchell, 810 S.W.2d 733, 735 (Tenn. Crim. App. 1991). To show an abuse of discretion in a probation revocation case, "a defendant must demonstrate 'that the record contains no substantial evidence to support the conclusion of the trial judge that a violation of the conditions of probation has occurred.'" State v. Wall, 909 S.W.2d 8, 10 (Tenn. Crim. App. 1994) (quoting State v. Delp, 614 S.W.2d 395, 398 (Tenn. Crim. App. 1980)). "The proof of a probation violation need not be established beyond a reasonable doubt, but it is sufficient if it allows the trial court to make a conscientious and intelligent judgment." Harkins, 811 S.W.2d at 82 (citing State v. Milton, 673 S.W.2d 555, 557 (Tenn. Crim. App. 1984)).

A defendant at a probation revocation proceeding is not entitled to the full array of procedural protections associated with a criminal trial. See Black v. Romano, 471 U.S. 606, 613 (1985); Gagnon v. Scarpelli, 411 U.S. 778, 786-790 (1973). However, such a defendant is entitled to the "minimum requirements of due process," including: (1) written notice of the claimed violation(s) of probation; (2) disclosure to the probationer of evidence against him or her; (3) the opportunity to be heard in person and to present witnesses and documentary evidence; (4) the right to confront and cross-examine adverse witnesses (unless good cause is shown for not allowing confrontation); (5) a neutral and detached hearing body, members of which need not be judicial officers or lawyers; and (6) a written statement by the fact-finder regarding the evidence relied upon and the reasons for revoking probation. Gagnon, 411 U.S. at 786; Morrissey v. Brewer, 408 U.S. 471, 489 (1972).

At the revocation hearing, the trial court discussed the defendant's criminal history, mental health conditions, and prior probation violations. However, the court did not address the allegations made in the instant revocation warrant or set forth the evidence it relied upon in revoking the defendant's probation. We, therefore, reverse the judgment of the trial court

and remand for entry of a written order detailing the evidence relied upon and the trial court's reasons for revoking probation.

## **CONCLUSION**

Based upon the foregoing authorities and reasoning, we reverse the judgment of the trial court and remand for further proceedings consistent with this opinion.

_____
ALAN E. GLENN, JUDGE